IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

THOMAS O. DAAKE, SR. and
ADELE Z. DAAKE,

      Appellants,

v.

DECKS N SUCH MARINE, INC.,

      Appellee/Cross-Appellant,

v.

THOMAS O. DAAKE, SR.,
ADELE Z. DAAKE, DAAKE
FAMILY TRUST 125, LLC, and
BANK OF AMERICA, N.A.,

      Cross-Appellees.
_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1331

Opinion filed August 29, 2016.

An appeal from the Circuit Court for Walton County.
David W. Green, Judge.

John R. Dowd, Jr. and Justin I. Remol of Dowd Law Firm, Fort Walton Beach, for Appellants/Cross-Appellees Thomas O. Daake, Sr., and Adele Z. Daake.

Charles P. Young and Cecily M. Welsh of Emmanuel, Sheppard & Condon, Pensacola, for Appellee/Cross-Appellant Decks N Such Marine, Inc.

Joseph D. Steadman, Jr. of Jones Walker LLP, Mobile; T. A. Borowski, Jr. and Darryl Steve Traylor, Jr. of Borowski & Traylor, P.A., Pensacola, for Cross-Appellee Bank of America, N.A.

B.L. THOMAS, J.

We affirm all issues raised on appeal and cross-appeal, but write to explain why we reject Appellee's argument on cross-appeal that the trial court erred in denying its claim for relief in quantum meruit for construction of a seawall. Cross-Appellee Daake Family Trust 125, LLC ("Family Trust") refused to honor a contractual agreement, which it signed, to compensate Appellee Decks N Such Marine, Inc. ("DNS") for the construction of a seawall on its property. A valid construction contract was formed between Appellee DNS and Appellants Mr. and Mrs. Daake and the Family Trust; however, DNS brought a claim for breach of contract only against Mr. and Mrs. Daake individually, and failed to allege a breach of contract claim against the Family Trust. Thus, although the result here is neither just nor equitable, the trial court correctly denied relief under the binding legal principle that where a valid contract exists, no equitable relief of quantum meruit may be granted.

The trial court perceptively described this case involving the construction of a beach house and two seawalls as a "nightmare for all the parties involved." The trial court granted relief in the litigation involving the breach of contract claims by DNS against Appellants for unpaid compensation for construction on the beach house and one seawall, and denied Appellants' counterclaims for damages against DNS. However, the trial court denied DNS's claim for quantum meruit damages

as to one of the seawalls, because it found that although the Appellants' Family Trust had breached the seawall contract, the court could not award damages, because DNS had failed to plead or prove a breach of contract against the Trust.

Quantum meruit is a "legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services . . . where . . . a reasonable person receiving such benefit would ordinarily expect to pay for it." W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So. 2d 297, 305 (Fla. 1st DCA 1999) (quoting Osteen v. Morris, 481 So. 2d 1287, 1289-90 (Fla. 5th DCA 1986)). Quantum meruit is premised upon the absence of an express and enforceable agreement; accordingly, the existence of a valid, written contract between the parties necessarily precludes the doctrine's application. See Corn v. Greco, 694 So. 2d 833, 834 (Fla. 2d DCA 1997) ("Quantum meruit relief is founded upon the legal fiction of an implied contract. This fiction cannot be maintained . . . when the rights of the parties are described in a written contract."). Here, DNS contracted to build seawalls on Lot 11, which was owned by Appellants, and Lot 125, which was owned by Appellants' Family Trust. DNS does not dispute the validity of the seawall contract; rather, it argues that because the Family Trust was never a party to the contract, a claim for quantum meruit could be maintained against it. DNS asserts that in the seawall contract, there is a notation to the Family Trust on the

3

signature page under the heading "Consent of Owner"; otherwise, the Family Trust is never mentioned in the contract.  Thus, DNS argues, the contractual agreement was between DNS and Appellants, not the Family Trust.

The primary rule of contract construction "is to ascertain the intention of the parties, which is accomplished not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions." Tampa Fed. Sav. & Loan Ass'n v. Aeon, Inc., 403 So. 2d 1002, 1004 (Fla. 2d DCA 1981).  When construing a contract, courts are required to give contractual language its plain meaning.  O'Brien v. McMahon, 44 So. 3d 1273, 1277 (Fla. 1st DCA 2010).  Language that is clear and unambiguous "must be construed to mean 'just what the language therein implies and nothing more.'"  Id. (quoting Walker v. State Farm Fire & Cas. Co., 758 So. 2d 1161, 1162 (Fla. 4th DCA 2000)).  If the contract is ambiguous, and the ambiguity arises from a conflict between the printed terms of the contract and the written terms, "the written terms ordinarily prevail." Hurt v. Leatherby Ins. Co., 380 So. 2d 432, 434 (Fla. 1980).  Also, ambiguities are generally construed against the drafter of the contract.  Id.  Finally, the contract must be interpreted "in a manner that does not render any provision of the contract meaningless," keeping in mind that "'the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.'"  Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n,

Inc., 169 So. 3d 197, 203 (Fla. 1st DCA 2015) (quoting Taylor v. Taylor, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)).

As originally drafted by DNS, the provision on the first page of the seawall contract stated that the agreement was between Appellants Thomas and Adele Daake, referred to as "Owner," and Appellee DNS, referred to as "Contractor," with no mention made of the Family Trust. In the signature section on page four, however, Appellants clearly signed in their corporate capacity as members of the Family Trust for the seawall on Lot 125, as evidenced by the handwritten notation: "for #11 and for #125 & Daake Family Trust 125, LLC as [member]." The conflict between the drafted provision and the handwritten notation creates an ambiguity as to who was included as a party to the seawall contract. Applying the rules of contract construction, Appellants' handwritten notation that they signed on behalf of the Family Trust for Lot 125 should prevail as a clear expression of Appellants' intent to include the Family Trust, which owned Lot 125, as a party to the contract. Furthermore, the ambiguity caused by the conflict should be construed against DNS as the drafter of the contract. Leatherby, 380 So. 2d at 434.

Interpreting the seawall contract to include the Family Trust is further confirmed as a reasonable and practical result when the nature and object of the seawall contract is considered. DNS entered into the contract with the owners of Lots 11 and 125 for the purpose of constructing seawalls on the properties, and it is

5

undisputed that at all relevant times, the Family Trust was the owner of Lot 125. A specific example of the reasonableness of such an interpretation is the "Consent of Owner" provision on page four, which provided that consent was given for the filing of mechanic's liens by any person who supplied materials or services for the work described in the contract on the property on which it was located if they were not paid. For a valid lien to attach, the person contracting for the improvement of the property must have an ownership interest in the property, and in fact, "[w]hen the person contracting for improving real property has no interest as owner in the land, no lien shall attach to the land . . . ." § 713.11, Fla. Stat. (2016). Therefore, interpreting the contract to not include the Family Trust, the record owner of Lot 125, would render the consent provision meaningless, because DNS would not have a contract with the owner of Lot 125, would not have the owner's consent to file a lien against Lot 125, and would not even be able to attach a lien to Lot 125. Applicable principles of contract interpretation show that the trial court did not err in finding that a valid contract existed between DNS and the Family Trust for the construction of a seawall on Lot 125. Accordingly, the court was correct in ruling that DNS was precluded from recovering against the Family Trust under the theory of quantum meruit, because a valid contract existed between them, and DNS failed to bring a breach of contract claim against the Family Trust.

While DNS argues that if the Family Trust was a party to the seawall

6

contract, then a breach of contract claim against the Trust was tried by acquiescence, there is no evidence to support this argument. See generally Alfred S. Austin Constr. Co., Inc. v. Namia, 220 So. 2d 36, 37 (Fla. 2d DCA 1969) (holding that trial court erroneously entered judgment "pursuant to a theory which was neither pleaded nor tried (by acquisience or otherwise)"). Thus, we affirm the trial court's order finding that a

> valid written contract existed between Decks N Such and Daake Family Trust 125, LLC, which . . . preclude[s] an award under the theory of quantum meruit, and no complaint for breach of contract having been filed against the Trust, the court is unable to award damages for either a breach of contract or quantum meruit, despite the court's finding that Daake Family Trust 125, LLC, did breach its contract with [DNS] by failing to pay $47,703.20, plus $29,852.78 in prejudgment interest.

AFFIRMED.

WINOKUR and JAY, JJ., CONCUR.

7